Case number 19-7064. United States of America, ex-rail Harry Barko and Harry Barko appellant v. Halliburton Company, et al. Mr. Yoder for the appellant. Mr. Sheehan for the appellant. Good morning. May it please the court. My name is Todd Yoder and I represent appellant Harry Barko. I ask to reserve three minutes of my time for rebuttal. Thank you. Mr. Barko respectfully requests that this court reverse the lower court's decision regarding the taxation of contested costs. Specifically, with regards to KBR's e-discovery copying costs, Mr. Barko urges that this court follow 1. the plain and ordinary meaning of the statute 2. the Supreme Court's directive to read the cost statute with a modest scope and only tax minor incidental expenses and 3. the reasoning and logic employed by all other circuit courts to address this issue. By following this guidance, it is clear that only the costs directly necessary to copy final produced documents into a suitable electronic production format can be taxed. In this case, that represents only the $362.41 that Mr. Barko has conceded or taxed, which represent the conversion of final production into PDF formats and the copying of those PDFs onto a production drive. Starting with the plain language of the statute, section 1920, subsection 4 only allows for the fees for simplification and the cost of making copies. Nowhere in this section does it mention discovery costs. In fact, nowhere in the entire cost statute are discovery costs mentioned. As such, the Federal Circuit in CBT Flint and the Third Circuit in the race tires case, as well as the other courts, have found that the plain and ordinary meaning of the statute limits costs of taxable to only those directly necessary to copy final production copies. It does not allow for the discovery obligations that need to be met. Let me just interrupt you for a minute. You mentioned the $360 that Barko already agrees, right? Yes, sir. Let me just ask you about two other items. Under your theory, just assume your theory is the right one, that's just the cost of copying the final documents turned over to, right? Yes, sir. What about, let's see, Vixen and Elkins had $7,400. Isn't some part of that attributable to converting files to PDFs at the end? Your Honor, based on the record, that is not, or that is impossible to tell. The record only states- But shouldn't the district court figure that out? What's that charge? Under your theory, on remit, suppose you're right and we adopt your theory. Shouldn't we send it back to the district court to find out whether any portion of that was attributable to copying or converting the files to PDF? No? Your Honor, it was KBR's burden to put forth with their bill of costs, supporting documents showing specifically what the costs are for, they failed to do so. Okay, I get that. And what about the $500 external copying labor? The external copying documents all show that Mr. Barca was taxed for a per-page basis for the copying. He was taxed what? He was taxed on a per-page basis for copying. There are specific line items for the number of documents and how much those cost. And then in some of the invoices, there are random labor line items, $500 total, which have not been explained. And we do not know, therefore, there is no way to know they're directly attributable to actual copying, not extraneous tasks, not covered by the statute. I see. Okay, thank you. Yes. Can I ask you a question about the burden point you made, which is if we abstract away from the e-discovery context and just go to something that is more tangible, like the hard, you know, traditional Xerox copies. Yes, Your Honor. Is it the case that the way this works is that the bill that's submitted is required because the burden exists on the part of the party who's requesting the taxation of costs, that they're supposed to itemize it in such a way that all you see on the bill is the final stage duplication of documents that are actually either submitted to the court or turned over to the other side? There needs to be enough specificity to understand that those costs can be taxed or covered by the statute. And that is only for the copying costs. So simple words like prepare production is unclear what that means. So, yes, I believe they need to be more specific to the fact that they're actually related to copying and not simply meeting their discovery obligations. And that's how that actually works with hard copy documents, as far as you know? As far as I know, yes, Your Honor. You need to have at least some indication that it was for copying and not other tasks. So what about one of the issues here is the cost of binders, right? Those are, I take it, the binders for the documents that were turned over? Is that what those are? I believe from KBR's pointing out, David, those are binders to use for exhibits during depositions, to house exhibits that were used during depositions. You're right. The cost of copying those depositions were taxable, correct? The exhibits, yes. Yeah. So, and you say but not the binders. But KBR points out that our local Rule 39A for briefs permits the recovery of covers and bindings of briefs. That is correct. So wouldn't we be, wouldn't this, I mean, I realize we're interpreting the statute here, but wouldn't it be odd to allow binders for briefs to be taxed but not binders for depositions? I believe the local rule allows for taxation of the binding and the cover, which as the copies of briefs are required to have, the rules also make it necessary to have the bindings and the covers. I see. Therefore, those are necessary costs for making the copies that have to be filed with the court. The other binders that are issued in this case are simply for organization and complacency. All right. Thank you. One of KBR's main arguments and what rests on is that the 2008 amendments to the statute somehow opened up the door to all sorts of discovery costs. This is not the case. The legislative history clearly shows the amendments only were intended to allow electronic copy costs in addition to a hard copy paper, which had been allowed previously. All of the cases, including from the Federal Circuit and CBT Flint, the Fourth Circuit, the Country Ventnor race tires, the Third Circuit, had looked at the legislative history of the amendments and all decided they were modest in skill and they did not shift any of the costs from discovery that had not previously been taxed on losing parties. I see that my initial time is nearly up. I'd like to preserve the rest of my time for rebuttal. Can I just ask you one question? Yeah, no problem. I don't think it's going to interfere with the rebuttal time, which is, as I understand the way the technology works, you have to upload, in order to ultimately be able to convert something into a PDF, which that last stage, even you agree, that's making of copies. There has to be an uploading into some format and an image copying that then facilitates the conversion into a PDF? Well, as far as we are aware from KBR's affidavits, the original documents were in electronic format. Those original documents could have simply been converted. Instead, they uploaded them into an e-discovery platform. The only purpose of the e-discovery platform, as they have admitted, is to search through their documents, review their documents, filter documents to figure out what to produce. That was not necessary, that upload, to convert to PDF. They could have taken the original source and simply converted that to PDF. But could you have a situation in which actually the most efficient way in which to convert something to a PDF is to upload it to some platform that serves another purpose too? It could serve an e-discovery purpose generally. It just turns out that's the best way to get the documents ready for conversion to PDF. Yes, Your Honor, that may certainly be the case, but that is not what KBR has argued the reasoning was for here. They have only argued that conversion to PDF or conversion to the e-discovery was for document review, and therefore only the costs related to the production copying should be the cost. But if you had the other route that I described, that would, in your view, count as making that conversion? Only if it was necessary, and yes, correct, if it was a necessary step. Okay, thank you. Okay, thank you. May it please the Court, Christian Sheehan for the appellee, KBR. KBR agrees with Mr. Barco that in light of the 2008 amendments, electronic copying costs should be considered at least on par with paper copying costs. KBR's interpretation of the statute does that. Mr. Barco's does not. So for some perspective, if this litigation had been in the pre-electronic discovery era, KBR would have been entitled to recover its per-page copying costs. Applying standard DC rates at the time, KBR would have recovered more than $24,000 for paper production-related copying costs. Producing documents electronically is more expensive than producing in paper, not less. And I direct the Court to a law review article of 6D Duke Law Journal 547, which discusses the cost of electronic discovery. Yet under Mr. Barco's reading of the statute, KBR would be entitled to recover only $362 in electronic copying costs. 1.5% of what it would have been entitled to recover had the productions been made in paper. Well, but wasn't it KBR's choice to do this with digital technology? I mean, it made the choice to do that, right? Judge, under Federal Civil Procedure 34, to the extent that information is maintained electronically, there's an obligation to produce it in reasonably usable format. And as the Sedona Principles make clear, a number of courts have held that if a party maintains information electronically that has metadata, that has characteristics about who created the document, when it was created, the party does not satisfy its discovery obligations by producing static images without metadata. So KBR would have been taking a significant risk. If you're wrong about your theory that the 2008 amendments expanded what was recoverable under the statute, can you still prevail here? Judge, our view is that. Just yes or no. Can you? Suppose you're wrong about that. Suppose the statute means exactly what it said before. It just means that costs that, copying costs that were recoverable for physical are now recoverable for digital, but just those costs, nothing else. Judge, if just the copy cost, just the cost of the physical copy themselves were recoverable, yes, I would agree with you. You would agree, then, that you can't prevail? I would agree with you. But the statute doesn't say that. The statute says the cost of making copies. And in this context, the word making is a gerund. And according to the Oxford English Dictionary, what it means, making means the process of producing something. So the cost of making copies means the cost of the process of producing copies. I mean, you take that to a logical extreme, you get absurd results. You're saying everything that leads up to a final producible copy should be covered, laid through, everything. That just doesn't make sense in light of the extensive precedent that we have, what the Supreme Court said, and the language change is nothing to suggest that the statutory language change meant to make that kind of a change in recovery of costs. I mean, just, I'm smiling listening to you because the logical extension of what you're saying is everything's covered. I mean, everything pre-discovery, I mean, everything in preparation for copying would be covered under your theory. That's incorrect. That's simply incorrect. Judge Edwards, that's not our theory. So the Supreme Court has drawn. But when you listen to what you said, what you're essentially saying is everything reading what you say is new language in the statute. All costs incurred in getting ready to copy are recoverable. That's wrong. Judge Edwards, respectfully, that's not our position. Our position is that all costs that are intrinsic to the copying process itself. That are what? I just didn't hear you. That are what? All costs that are intrinsic to the copying process itself. So the Supreme Court has drawn clear lines. In the Taniguchi case, it held that attorney's fees, investigator fees, expert witness fees are not recoverable. In other words, the cost of performing substantive work of the case are not recoverable. So if you put that in the electronic discovery context, the cost of identifying relevant custodians, the cost of identifying where the relevant documents are, that's not recoverable. The cost of reviewing is not recoverable. But I think maybe to put this in perspective, it's helpful to just walk through what the steps are. So the initial step is identifying relevant documents. We agree that that is not recoverable. But then the next step is imaging or copying the data so that it can be loaded into any discovery. Well, what do you think? What the Ninth Circuit said, I forgot which case it is. But they say, look, the proper analogy here is that at that point, you know, I used to do this with an associate in a big law firm. You're in the client's office going through a lot of documents. You have two choices. You can either review the document there or you can make a fax and take it back with you. That's the choice the lawyer makes. That's not necessary to the ultimate copy. That's what the Ninth Circuit said. Judge, that... What's the matter with that? If we're trying to think about how the digital world applies to a standard that was developed for paper copies, doesn't that make sense? Judge, a couple of responses. I think it's not always possible to analogize electronic copying to paper copying. And I think the court's first task is to apply the plain language of the statute. Well, tell me where it's not possible. That would be really helpful, actually. Why it's not possible? Where does it break down? Yeah. Sure. Where does the model that's in my mind from years as a young associate in a big law firm doing this stuff, where is that? Where is what I did then? Going to the client's office, looking at documents, copying the ones I wanted to bring back, developing a code, analyzing them, and ending up with a pile of 100 documents, 25 of which we decided to give to the client. And we got... Our cost was copying those 25. So where does that break down? Sure, Judge Tabor. Where does that break down? So in this context, for KBR, the initial step that KBR had to follow was it first had to retrieve data from tapes. It had to what? I'm sorry? I'm sorry. It had to... The data, the source data was stored on tapes. Oh, on tapes. And it wasn't in a readable format. So the first thing that KBR had to do was convert it to a readable format. So even if Mr. Barkow is right, that KBR then could have reviewed the data in native, just copied it and produced it to him. Those initial conversion costs from tapes to a readable format, those are copies that were necessarily obtained for use in the case. That's the pathway forensics invoice. What's the preparation cost? Judge... The original source. I mean, their argument is the original sources could have been converted directly to PDFs. That's right, isn't it? Judge, physically... Well, okay. For KBR, the initial source data was on tapes. That could not have been converted to PDF. That person had to be converted to a readable format. Then, yes, the documents that were in readable format could have been converted to PDF, but the issue here was producing responsive documents to Mr. Barkow. So Mr. Barkow didn't issue a request for all of the e-mail of John Smith. Instead, he issued 64 specific RFPs asking for documents on specific topics, which meant KBR had to identify sources of those documents, but then it had to identify which documents were actually responsive. And to do that, within the six-month discovery period that KBR had, it could not, it would not have been possible for KBR to scroll through the e-mail inboxes of all of these custodians. Okay. A short discovery period. Suppose there were... Just help me with this. Suppose there were... The universe was 1,000 e-mails, so you had to convert those, right, to be able to read them. Is that your point? Right? And that's copy. And suppose at the end of the day, you only turned over 10 of those to Barkow. Would he only be charged for 10 or for all 1,000? Sorry, I think the question is analogizing to this case. KBR produced 172,000 pages. What? KBR produced 172,000 pages in this case, and it loaded 2.4. It's not answering my question. He would be... You're charging him on your theory for copying documents you never gave him. Right. Yes. Why hypothetically? That's preparation. No, I mean, it really is. That's the way it's always been. And if the law gets changed and the Supreme Court tells us otherwise, then we'll think about it. But it's modest. It's a modest amount of money is what the Supreme Court says. It's not a windfall. You're not looking for hundreds of thousands of dollars in costs. That's just not our system. So, Judge Edwards, a few responses to that. First, I think it's important to clarify the standard of review for this specific question that we're talking about. So, there's two components to whether costs are taxable under Section 1920. And they each have a different standard of review. So, the first is whether a certain category of cost is making copies. Then the second question, which is what we're talking about, is whether it was necessary to produce, to gather X number of documents and then only produce Y number of documents. That's a separate question. That's a factual question, which this court held in the Sunship case. And that's subject to an abuse of discretion standard. So, here. Abuse of discretion isn't always a winning standard. It does. I love that you took us to standard of review. I guess I would have gone there, too. But you can lose under abuse of discretion if we think the district court is including too much or allowing too much. It's abuse of its discretion. It's an incorrect calculation. Of course, Judge Edwards. But the district court here reasonably exercised its discretion. It was necessary for KBR to gather all of the source data. But there's also all kinds of preparatory steps, even in the hard copy context, that are necessary. It's necessary to cut down a tree to create paper to enable copies. But we don't go back to the cutting down of a tree. And I think the analogy that I have in my mind, and it sounds like my colleagues have in their mind, too, is in a lot of situations you've got to assemble a boatload of documents to figure out which ones are the ones that are responsive. And the part where you assemble the documents and then go through the process of identifying which ones are responsive, yeah, you might have to actually copy documents in that process. You might have to send e-mails that attach PDFs. You might have to do all kinds of things that enable you to do the calling to identify which documents are actually responsive. And then at the very end stage, you copy those documents so that you can turn them over. But everything that happens before the copying of the identified documents so that you can turn them over is not taxable in the hard copy context. And it sounds like in the e-discovery context, the initial stage, you know, uploading the 2.4 million, let's just use that one, yeah, you have to do that in order to be able to identify which subset of that catch of documents are ultimately going to be imaged, copied, and sent over. But the part where you upload the entire gamut in order to call them so you can identify which ones are going to be turned over, that's just not making copies. Judge, e-discovery is just different than producing in paper. In the e-discovery context, it's one holistic process, and all of these steps are intrinsic in the process of making copies. While some of the examples you gave in the paper context may have been related to copying, so paying rent for an office. They're not intrinsic to the process of copying. Electronic discovery is just different. And I would also make a point. You go ahead. I don't know what we're supposed to do with searching, for example. I mean, e-discovery, part of the e-discovery process is searching all the e-files so that you can identify which ones are responsive. That just does not seem like something that the statute meant to allow the prevailing party to recover. Because any conceivable analogy I can come up with, that's just the process of document review. So you go through and figure out what's, yeah, you're right. It all happens, you know, sort of seamlessly from how I understand these platforms work. And so you might pay some e-discovery vendor a significant amount because they can do all of this efficiently. But a lot of what they're doing is just not recoverable. Joe, we're not requesting costs for searching. We agree that that's performing the substantive work of the case, and that's outside the scope of taxable costs. But we're seeing the e-discovery platform doing that. I thought part of the virtues of the e-discovery platform is that it allows, for example, keyword searching of a bunch of, you know, a bunch of things on the hard drive. So the costs that KBR seeks are costs for the platform itself, are not the costs, the labor costs, for example, for actually doing the searching. And I think I wanted to make one additional point. Wait a minute. Will you go ahead and make your point? Sorry. That there are, in the paper context, it was priced by page of the final production copies. And that, a number of costs were built into that. Labor costs, supplies costs. In the e-discovery context, the pricing model is just different. Vendors don't price based on the final electronic copy, which itself has little if any monetary value. They price based on stages of the process. But that doesn't answer our question. What you're really saying is that as a result of doing this digitally now is that the recoverable costs are going to be dramatically lower. Because there is no any longer physical copying. There won't be. It's just pushing a button and producing the 10 documents. So that just reduces the cost. It doesn't mean that you need to reach back and it doesn't require that you reach back further into the process and recover more services in order to increase the cost. That just doesn't answer the question. Judge Tato, I think that that view is contrary to the limited legislative history that exists. Before you go into legislative history, my view is the statute is pretty clear. But let me tell you what really worries me. If we go beyond sort of a physical model, if we go beyond, what is it, $360 here, the actual copying of the. $362 is what Mr. Fargo. Whatever it is. As far as I can tell, and I've been here a long time, the calculation of costs is routine. It never produces disputes. The Supreme Court said in Taniguchi they're relatively minor incidental expenses. They're almost always just calculated by the clerk's office. If we go beyond sort of the clear line rule, namely it's the cost of ultimate copying the documents for the plaintiffs, the recovery of costs is going to become another battleground for litigation. It's just we're going to have this in every case where you're trying to figure out where the lines are. And not only is that not what the recovery of costs is supposed to be, but my other worry is that you're going to be shifting to cost recovery, expenses and costs that can only be recovered under fee shifting statutes. That worries me also. So how do you help me with those two concerns? First, Judge Tatel, so first, KBR provided documentation of all of its e-discovery costs. There are invoices for its e-discovery costs, and the clerk was able to- That assumes the answer to the question. I know you have them there, but the question is are they recoverable costs under the statute? Sure. Sorry, I misunderstood your question. I thought the question was can the district court, can the clerk, based on the documentation that exists, easily tax the costs? And the answer to that is yes. Well, look at the confusion the three of us are having and the disagreement right here in the courtroom about what's included and what's not included. We're not going to have the clerk's office try to figure that out. Well, I do think this court should give clerks advice. You use the word intrinsic. It's very interesting. I mean, I guess I'd use it too if I were in your position. It kind of hides away everything. What you're suggesting is that everything that you have to do to make it convenient for you to make the final copy should be counted as cost. That's just wrong. We have nothing in the statute of precedent. You're absolutely right. If you mean intrinsic that way, yeah, then all these processes, they're all intrinsic. They're all subsumed under one umbrella. But that begs the question that my colleagues and I have been wrestling. The only thing you're entitled to is the cost for the final copy. And it's nice that your preparation or getting ready to do that is different and fun and clean and you can do it in a nice way now. It doesn't matter. You only are entitled to recovery for cost for the actual copying of the found documents. Judge Edwards, two points. So first, if this court were to hold that a prevailing party is only entitled to the cost for the final copy, it would be splitting from four other circuits. It would be splitting from the federal circuit and CBD Flint, which made clear that we adopted the dissent's view. I suppose that's true. The dissent's view is picked up by the other circuits. Well, so. I mean, if you take the dissent's view in the ninth circuit, most of what the, I mean, the federal circuit, most of what they say is fine. The dissent cleans it up a little bit. And then the other circuits are consistent with that. It's a pretty straightforward view in all the circuits. Actually, either way we go in this case, there's a circuit sport, isn't there? Yes. So we can't avoid a circuit sport. That doesn't get you anywhere here. We just have to pick the circuit we like. Judge Tatel, so the split currently is four to two. So four circuits have held that initial copying cost. So these are the costs of imaging the initial source media are literally copying. You're literally copying a hard drive. And those are all. You're not helping me with this. By telling me four circuits went this way and three circuits went the other way, I know that. This court is trying to interpret this statute. So you've got to make your argument about why the costs you're seeking in recovery are, quote, making copies. Judge Tatel, so I think in the absence of substantial legislative history, it's instructive to look at the context at the time. This court presumes that Congress acts with knowledge of the legal landscape in which it's legislating. And in 2008, the legal landscape was the federal rules were just amended in 2006 to make clear that a party has the same obligation to produce ESI that it has to produce paper documents. The second edition of the Sedona Principles were just issued, providing additional guidance and best practices for e-discovery. And there were a number of studies and publications about the increased cost of e-discovery. Congress dealt with this new reality by amending Section 1920 in a way that accounts for the differences between paper and electronic copies. Before 2008, a prevailing party could recover costs for copies of paper. This allowed recovery of a substantial portion of a prevailing party's costs because the administrative costs were built into the final per-page rate. But simply, if Congress had intended to continue that practice in the e-discovery context, it could have changed the statute to say costs of copies of any materials. But it didn't say that. It said the cost of making copies. And the definition of making in this context is the process of producing something. That clearly extends beyond the final production copy. I think there could be disagreement about how far back it extends, but it clearly extends beyond the final production copy. I just have one last question about the binders. What did you think about Mr. Yoder's response to my question about the binders, which is that our rule about briefs requires the briefs to be bound and covered. So this is a question of necessity, Judge Taylor, which is a factual question. In other words, you're going to have a big pile of papers. You can't just hand them over. You've got to bind them, right? Yeah. Is that your point? Yeah, I mean, that is what the district court determined, yes, and that it was reasonably necessary for KBR to do this. And there's two points about what necessary means. So necessary is determined from the prevailing party's perspective at the time the cost was incurred. And necessary means reasonably necessary, not indispensable. And I think that on this issue, this is a matter where reference to the district court is clearly required. Okay. Thank you. Thank you. Did Mr. Yoder have any time? Mr. Yoder, I have two more questions. Okay. Mr. Yoder, you can take two whole minutes. Thank you, Judge Taylor. I just have a few points to make regarding KBR's arguments. First, KBR said that they did not at all seek cost to recover searching. However, on page A28 of the appendix, it says that KBR internal costs were for their staff to process, load, search, and produce data and provide product management. On page 36 of their brief, they specifically say that the e-discovery platform was used to filter, conduct searches, and conduct technology-assisted review. Secondly, the legislative history, as reviewed by all of the courts, the Federal Circuit, the Third Circuit, have found that it did not expand, as KBR argues. Specifically, the statute was amended word for word by recommendations from the Judicial Conference. The report coming out of the Judicial Conference says the statutory amendments were limited and the amendment to this section would expand the concept of papers. It does not say it expands the concept of making copies or copying. It's only the concept of what papers means. If there are no more questions. Okay, thank you both. The case is submitted.
judges: Tatel, Srinivasan, Edwards